UNITED STATES of America,
Plaintiff-Appellee,

v.

Arthur L. PHILLIPS,
Defendant-Appellant.

No. 77–5003.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1977.

Decided May 3, 1978.

Edward F. Marek, Federal Public Defender, Cleveland, Ohio, (Court-appointed), for defendant-appellant.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Circuit Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal by Arthur Lawrence Phillips, appellant, from his conviction before a jury in the United States District Court for the Northern District of Ohio, Eastern Division, on two counts of an indictment which charged him with armed bank robbery and taking a hostage in violation of 18 U.S.C. § 2113(a), (d) and (c).

On the morning of January 7, 1974, at about seven o'clock, Robert L. Isaacs appeared at the door of the residence of Robert Smith, an assistant cashier at the Portage National Bank of Garrettsville, Ohio and by subterfuge to use the telephone, entered the house. After being inside the house, he drew a pistol and a male accomplice, wearing a theatrical mask, also entered the home. They blindfolded and tied up Mrs. Smith and then took both Mr. and Mrs. Smith a short distance away in their own Volkswagen automobile. Here they met another accomplice, later identified as William Joseph Barnes, who drove up in a pick up truck.

The male who wore the theatrical mask joined Barnes, in the pick up truck with Mrs. Smith as hostage. Isaacs drove to the bank with Mr. Smith and forced him to unlock the bank, which was not yet opened. Inside the bank they met another assistant cashier, Warren L. Eisenmann. Issacs forced Eisenmann to open the vault and to empty the cash vault and drawer. Isaacs then took Smith and Eisenmann back to the pick up truck, tied up the Smiths and Eisenmann and escaped in the pick up truck with $159,000.

Later Isaacs and Barnes were arrested and pleaded guilty to bank robbery in the United States District Court for the Northern District of Ohio. A warrant was issued for appellant Phillips on January 14, 1974. He was not arrested until May 10, 1976, in Huntington Beach, California, where he was living under an assumed name, Arthur Brow. He was indicted as the third participant in the robbery.

At the trial of Phillips, Barnes testified as a prosecution witness and Isaacs as a defense witness. The defense does not raise any question about the sufficiency of the evidence and we will not discuss it in detail. The testimony of Barnes is the only direct evidence of Phillips' participation in the robbery. A fellow prisoner, Hall, testified that Barnes had told him that Phillips had nothing to do with the robbery but that he, (Barnes) was going to "set Arthur Phillips up" for having an affair with Barnes' wife. Barnes denied this on cross examination.

There was some circumstantial evidence, one item in particular, involving a green jacket worn by the third member of the robbers. Barnes testified that the defendant was wearing a green jacket and, when they arrived at the Fleetwing truck stop after the robbery, he, the defendant, took it off and threw it away. Greggory Sperro, manager of the Fleetwing restaurant testified that he found a jacket on the morning of January 7, 1974 and later turned it over to an F.B.I. agent. At trial he testified that the jacket in the hands of the F.B.I. looked like the one he had found. Mrs. Smith also testified that it looked like the one worn by the third member of the robbers.

Isaacs testified that he knew the defendant and that in December, shortly before the robbery on January 7th, he was with the defendant and had him, the defendant, drive him to Garrettsville, Ohio to see Isaacs' mother. Except for the date, his testimony of his association with the defendant on this occasion is very similar to Barnes' testimony of his association with Isaacs and Phillips on the night before the robbery.

Isaacs further testified that he did not see or talk to Phillips again until the night before the commission of the robbery. In this conversation he told Phillips he wanted a ride from Columbus, Ohio. Barnes testified that, after the robbery, they, Isaacs, Phillips and himself, drove to Akron, Ohio and then to Columbus, where defendant obtained a room in a motel. Here the money was divided and Barnes left his fellow robbers, taking a bus back to Akron.

Margaret Graham, manager of the Inn Towne Motel in Columbus identified a motel registration card indicating that Art Phillips registered at the motel on January 7, 1974.

We conclude from this brief summary of evidence that there was ample evidence for submission of the case to the jury.

█ The appellant was arrested in California on May 10, 1976 and returned to Cleveland, Ohio, where he was indicted as a participant in the robbery of January 7, 1974, with Isaacs and Barnes. On May 21st he was interviewed by F.B.I. agents Owens and O'Brien, after being given *Miranda* warnings. At the trial the appellant was cross examined with reference to the statements he had made to these F.B.I. agents at the time of the interview. At a point in this interview he stated that he had asked for a lawyer. The agents continued to question him after he had made this request. The trial judge permitted this cross examination.

The allowance of this cross examination is the first assignment of error made on behalf of the appellant.

The trial judge conducted a voir dire examination prior to the beginning of the trial with reference to the admissibility of the evidence of this interview. He ruled that, " * * * the whole thing has to be thought as a series of questions, whether put in the interrogatory forms or statements as to what indeed he was charged with. And therefore, at this stage of the case, I will sustain the Defendant's objection to permitting the Special Agent, Agent O'Brien, to testify as to the interview. Now, this is without prejudice to the government's using this very same information, if, indeed Mr. Phillips (defendant) takes the stand pursuant to, I believe, it is *Harris* versus *New York*."

At this point, defense counsel questioned the implications of the trial court's ruling that should the defendant take the stand, the government could use the challenged statements pursuant to *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Defense counsel indicated that he realized that *Harris v. New York* allowed the use of statements "for the purpose of impeachment" and that

"In order to impeach the Defendant using the statement that O'Brien took, which has temporarily been suppressed, there would have to be evidence first that he denied ever having signed it."

The trial judge responded, "We can wait and see what (defendant) says."

The record does not reflect that counsel for the defendant made any objection to the cross examination during the trial. Neither does the record reflect that counsel for the defendant, at the time the cross examination was being conducted, made any request of the trial court for a voir dire, for the specific purpose of determining whether the statements were usable by the prosecution for impeachment purposes as having been made voluntarily by the defendant.

The trial judge did not give any instructions to the jury with reference to the purpose for which this cross examination could be considered. No objections or exceptions were made to the charge to the jury by defense counsel and no request made for an

explanation of the limitations of such cross examination.

In *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, the petitioner had made statements to the police under circumstances rendering them inadmissible to establish the government's case in chief, by reason of the rule in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The trial judge permitted cross examination of the petitioner on these statements.

At p. 224, at p. 645 of 91 S.Ct. in *Harris v. New York, supra,* the court said,

"*Miranda* barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, provided of course that the trustworthiness of the evidence satisfies legal standards."

And further, at 225–226, at 645 of 91 S.Ct., the court said,

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. (Citations omitted). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. (Footnote omitted). Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment."

See also *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570, *Roland v. People of the State of Michigan,* 475 F.2d 892 (6th Cir. 1973).

Upon authority of *Harris v. New York, supra,* we conclude that the trial judge did not err in permitting the government to cross examine the appellant on the statements he made to the F.B.I. agent after he requested a lawyer.

Another error claimed on behalf of the appellant is that the trial judge permitted the testimony of a fingerprint expert.

Counsel for the appellant first injected the subject of fingerprints into the trial through cross examination. Counsel sought to show through cross examination of government witnesses that no fingerprints were found on the money that was recovered or on registration cards of the two motels where the third participant of the robbery stayed the night preceding the robbery and the day of the robbery. He also attempted to show, through the Smiths, that the robber who wore the mask wore no gloves and that he touched the door in the house, but no fingerprints of the appellant were found.

It was the purpose of this cross examination to infer that, if no fingerprints of the appellant were found, he could not have been the third participant of the robbery.

The gist of the testimony of the expert was that there are many factors which are determinative of whether one leaves a fingerprint upon touching something. The body chemistry, the secretion or non-secretion of body fluids is a factor. Some individuals do not secrete fluids in a normal fashion and, as a consequence, would not leave prints upon touching something. Such persons are known as non-secretors.

■ We conclude that this testimony of the fingerprint expert became relevant when counsel for defendant presented the negative evidence of fingerprints through cross examination. The trial judge is given a wide range of discretion in determining questions of relevancy. *Hamling v. United States,* 418 U.S. 87, 124–25, 94 S.Ct. 2887, 41 L.Ed.2d 590, and cases there cited. Under the circumstances, the trial judge did not abuse his discretion in determining, under Rule 403 of the Rules of Evidence, that the probative value of the fingerprint testimony was *not* outweighed by the danger of unfair prejudice to the appellant.

■ Finally, it is claimed on behalf of the appellant that his Sixth Amendment right

to be confronted with the witnesses against him was violated by the manner in which the trial judge permitted the probation officer to testify concerning the testimony of Isaacs, a confessed participant in the robbery.

The defense called Isaacs as a witness and he testified that Phillips was not a participant in the robbery. On cross examination he testified that he had never made a statement to anyone that Phillips was a participant in the robbery. He then testified that he had never made a statement to his probation officer, George Radigan, that Phillips was involved in the bank robbery.

Mr. Radigan was called as a rebuttal witness. The essence of Mr. Radigan's testimony was that, in his presentence interview with Isaacs, he, Isaacs, agreed with the "official version" of the crime which contained a statement that Phillips was a participant in the robbery.

It is the use of the term "official version" which triggers the objection of the defense. It is claimed that this suggests that there was evidence of other persons to the robbery and that the appellant was not confronted by them. Mr. Radigan explained that a report of the crime was made up for the use of the trial judge, that this report was made up largely from the files of the prosecuting attorney and that it was denominated "official version." There was also a defendant's version of the crime.

The purpose of this testimony was to impeach the credibility of the witness Isaacs. We consider that any misunderstanding with reference to it was cured by the instruction of the trial judge:

> "The jury will understand that you are not to draw any inference from the title which is stamped on those probation reports. These words, 'official version' are not, in any sense, to be relied on by this jury to determine the charge against Mr. Phillips."

The judgment of the District Court is AFFIRMED.