**Kay APPONI, et al., Class Action, Plaintiffs-Appellees, Cross-Appellants,**

v.

**SUNSHINE BISCUITS, INC., Defendant-Appellant, Cross-Appellee.**

**Nos. 85–3782, 85–3783.**

United States Court of Appeals, Sixth Circuit.

Argued July 22, 1986.

Decided Jan. 15, 1987.

Rehearing and Rehearing En Banc Denied Feb. 18, 1987.

Rehearing Denied Feb. 20, 1987.

David S. Cupps (argued), Vorys, Sater, Seymour and Pease, Columbus, Ohio, Jonathan R. Vaughn, Thomas E. Bezanson, Audrey Kevy Wilner, Chadbourne, Parke, Whiteside, & Wolff, New York City, for defendant-appellant, cross-appellee.

Asher Bogin (argued), Dayton, Ohio, for plaintiffs-appellees, cross-appellants.

Before WELLFORD and MILBURN, Circuit Judges, and DeMASCIO, District Judge.*

MILBURN, Circuit Judge.

Plaintiffs appeal and defendant cross-appeals from the district court's judgment for plaintiffs in this action to recover retirement benefits pursuant to a collectively-bargained pension plan. For the reasons that follow, we reverse in part and remand.

## I. FACTS

### A. *Procedural Facts*

Plaintiffs, former employees of Sunshine Biscuits, Inc. ("Sunshine") who had accu-

mulated at least fifteen years of continuous service but were not fifty-five years of age in 1972 when Sunshine closed its Dayton, Ohio, bakery, brought this action on November 29, 1977, against defendant Sunshine seeking to recover early retirement benefits described in Sunshine's pension plan. Plaintiffs' amended complaint, filed December 16, 1977, alleged breach of contract, common law fraud, and securities fraud.

The district court dismissed the fraud claims, holding that the relevant statutes of limitations had run. Thereafter, the district court held that the pension plan granted early retirement benefits only to employees who had fifteen years of continuous service at Sunshine and were at least fifty-five years of age when they left Sunshine's employ. Because each plaintiff was under fifty-five years of age when Sunshine's Dayton Bakery closed, the district court granted summary judgment for Sunshine on the contract claim thereby dismissing the case.

In a prior appeal, this court affirmed the district court's dismissal of the fraud claims, but reversed the district court's grant of summary judgment on the breach of contract claim. *Apponi v. Sunshine Biscuits, Inc.*, 652 F.2d 643, 649–50 (6th Cir.1981) ("Apponi I"). This court, although declining to rule on the proper interpretation of the pension plan, determined that representations regarding plaintiffs' rights to retirement benefits allegedly made by Sunshine's negotiators during negotiations concerning the pension plan gave rise to "triable issues of fact" under the equitable doctrines of estoppel and waiver. 652 F.2d at 649–50. The court reversed and remanded "for a jury trial as to whether the company made the representations alleged." 652 F.2d at 650–51.

On remand, the district court excluded all evidence not relevant to whether the representations were made and submitted a sin-

* Honorable Robert E. DeMascio, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

gle factual issue to the jury for its determination: "Do you find that agents of [Sunshine] advised representatives of [plaintiffs' union] that an employee with 15 years of service would receive a pension at age fifty-five whether the Dayton Bakery was open or not?" The jury found that Sunshine's agents had made the representations.

The district court then referred the matter to a special master for determination of the amount due each plaintiff. Plaintiffs and defendant stipulated that any pension benefits found to be due would be paid as lump sums. The district court adopted the first report of the special master which calculated a monthly pension benefit for each plaintiff, and plaintiffs and Sunshine appealed. This court dismissed the appeals and remanded for a "final decision on the issue of lump sum damage awards." On remand, the district court again referred the action to the special master. The district court then adopted the second report of the special master which determined the lump sum awards and ordered Sunshine to pay $3,032,158.43 into the court.

## B. *Historical Facts*

Prior to 1968, Sunshine established an employer-funded pension plan applicable to hourly employees at all of Sunshine's facilities in the United States. For employees who qualified, the pension plan provided full benefits upon retirement at or after age sixty-five, lesser benefits on early retirement at or after age fifty-five, and minimum benefits for retirement caused by disability at or after age forty-five.

In 1968, representatives of plaintiffs' union, Bakery and Confectionary Workers' International Union of America, Local 310 ("Local 310"), in the course of negotiating a two-year collective bargaining agreement with Sunshine, sought vesting of benefits on the basis of years of service only. Local 310's list of proposals included:

> Pension: The members will receive the following: job vesting regardless of age, for example: a man with twenty-five years of service, age 42, can leave the

industry (bakery) forever and at age 55 receive a reduced pension the rest of his life (without ever returning to work).

> For example: a man with fifteen years of service at age 32 or more may leave the industry (bakery) forever and receive a reduced pension at age 55 (without ever returning to work).

Witnesses for plaintiffs stated in affidavits and testified at the trial that Sunshine's negotiators' response to the proposal was that the pension plan, as it stood in 1968, provided for vesting of benefits after fifteen years of continuous service.

In the 1970 collective bargaining negotiations, Local 310 again sought vesting of pension benefits on the basis of years of service only. The union's list of proposals included a proposal and an example which were identical to that made in 1968 as quoted above. Witnesses for plaintiffs stated in affidavits and testified at the trial that Sunshine's negotiators again responded that the pension plan, as it stood in 1970, provided for vesting of benefits after fifteen years of continuous service.

Neither the 1968 negotiations nor the 1970 negotiations resulted in any change in the collective bargaining agreement or the pension plan concerning vesting of pension benefits. The key provision of the pension plan involved is paragraph 23, which provides: "An employee will be eligible to retire early, provided he is at least 55 years of age and has completed 15 or more years of continuous service."

In June 1972, Sunshine closed the Dayton Bakery because it could not comply with the Food and Drug Administration's requirements. Each union member was notified that the plant was closing and was informed of individual exit interviews at the plant. At those exit interviews, Sunshine gave each departing employee a sheet specifying the amount of pension benefits to which each employee was entitled. The exit interview forms for employees under age fifty-five showed no presently payable pension benefits.

## II. SUNSHINE'S CROSS–APPEAL

### A. *Pre-emption*

■ Sunshine argues that because plaintiffs' action arises out of Sunshine's purported obligations under a collectively-bargained pension plan or directly out of the collective bargaining process itself, it necessarily arises under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. This argument was not raised in Sunshine's answer nor presented to the prior panel. Ordinarily, "a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1278, at 339 (1969). Section 301, however, expresses a compelling policy in favor of uniform application of federal law in actions to enforce labor contracts, and, therefore, we decline to apply the waiver rule. *See National Metalcrafters v. McNeil*, 784 F.2d 817, 825–26 (7th Cir.1986).

■ Section 301 provides that the federal courts have jurisdiction in "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..., or between any such labor organizations." 29 U.S.C. § 185(a). Section 301 not only confers on federal courts jurisdiction in actions involving enforcement of labor contracts but also authorizes the federal courts to fashion the substantive law to be applied in suits under section 301. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). In fashioning federal substantive law, federal courts may resort to state law if it is compatible with federal labor policy. *Id.* at 457, 77 S.Ct. at 918. However, inconsistent state law must give way to principles of federal labor law. *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962).

■ The scope of the pre-emptive effect of section 301 was recently clarified by the Supreme Court in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). There, an employee brought an action against his employer, who was responsible for administering a non-occupational disability insurance plan under the collective bargaining agreement, alleging bad faith in the handling of his claim. The Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, ... or dismissed as pre-empted by federal labor-contract law." *Id.* at 1916 (citation omitted). The Court reasoned:

> If the policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations. These policies require that "the relationships created by [a collective-bargaining] agreement" be defined by an application of "an evolving federal common law grounded in national labor policy." ... Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Id.* at 1911 (quoting *Bowen v. United States Postal Service*, 459 U.S. 212, 224–25, 103 S.Ct. 588, 595–96 74 L.Ed.2d 402 (1983)).

The term "contracts," as used in section 301, is not limited to collective bargaining agreements but includes other agreements between employers and labor organizations. *Retail Clerks International Association, Local Union Nos. 128 and 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 26–28, 82 S.Ct. 541, 547–48, 7 L.Ed.2d 503 (1962); *Whelan v. Colgan*, 602 F.2d 1060, 1061 (2d Cir.1979). Collectively-bargained pension plans are "contracts" for the purposes of section 301. *Rehmar v. Smith*, 555 F.2d 1362, 1367 (9th Cir.1977); *see also International Union, UAW v. Textron, Inc.*, 312

F.2d 688, 690–91 (6th Cir.1963). Here, plaintiffs' claims arise from Sunshine's purported obligations under the collectively-bargained pension plan. Therefore, the holding in *Allis-Chalmers* requires that plaintiffs' claims be treated as section 301 claims.

### B. *Statute of Limitations*

Sunshine argues that plaintiffs' claims under section 301 are barred by the six-month statute of limitations established by the Supreme Court in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). It is the law of the case that plaintiffs' cause of action against Sunshine accrued "not later than 1972 when the company shut down its Dayton Bakery." *Apponi I*, 652 F.2d at 650 n. 10. Thus, if the six-month statute of limitations is applicable here, plaintiffs' claim, filed in 1977, is time-barred.

■ However, in *DelCostello* the Court held that the six-month statute of limitations period of section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), is applicable to hybrid section 301/fair representation actions. The Court limited its holding to the so-called hybrid action against both employer and union, distinguishing rather than overruling *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), which applied the state limitations period for breach of contract actions to an action by a union alleging a breach of the collective bargaining agreement. Thus, federal courts may still resort to the most analogous state statute of limitations where, as here, the action does not implicate the breach of the union's duty of fair representation. *Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1107 (6th Cir.1986) (en banc).

■ Sunshine argues that the most analogous Ohio statute of limitations is either the two-year period applicable in actions alleging bodily injury or injury to personal property, Ohio Rev.Code § 2305.-10, or the four-year period applicable to other tort actions, Ohio Rev.Code § 2305.-09. However, plaintiffs' claims against Sunshine for breach of the collectively-bargained pension plan sound in contract rather than in tort. *See Kraftco*, 799 F.2d at 1106. Ohio law provides a six-year statute of limitations for actions alleging breach of an oral contract, Ohio Rev.Code § 2305.07, and a fifteen-year statute of limitations for actions alleging breach of a written contract, Ohio Rev.Code § 2305.06. We hold that under either statute, plaintiffs' claims are not time-barred.

### C. *Exhaustion*

■ Sunshine argues that plaintiffs' claims must be dismissed because they failed to exhaust the grievance and arbitration procedures contained in the collective bargaining agreement. Exhaustion of contractual grievance and arbitration procedures is a prerequisite to a section 301 action by an employee against the employer for breach of a labor contract. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Whether a dispute must be arbitrated before judicial relief may be sought is determined by analyzing the collective bargaining agreement to see if it permits or requires arbitration. *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 1849, 80 L.Ed.2d 366 (1984).

■ The 1968 and 1970 collective bargaining agreements between Local 310 and Sunshine provided a grievance and arbitration procedure to handle "any controversy or difference ... aris[ing] between the company and the union with respect to interpretation or effect" of the collective bargaining agreement. The collectively-bargained pension plan did not provide for grievance and arbitration of disputes arising under it, but vested in an administrative committee, to be appointed by Sunshine's board of directors, exclusive authority to determine questions arising in administration and interpretation of the plan. The collective bargaining agreement did

not contain any provisions for pension benefits nor incorporate the pension plan by reference. Because the collective bargaining agreement and pension plan did not permit or require grievance and arbitration of disputes arising under the pension plan, plaintiffs' claims should not be dismissed for failure to exhaust contractual remedies. *See RCA Corp. v. Local 241, International Federation of Professional and Technical Engineers*, 700 F.2d 921, 927 (3d Cir. 1983).

D. *Waiver and Estoppel*

■ Sunshine argues that the district court's presentation of the single factual issue to the jury violated this court's mandate in *Apponi I* and improperly deprived it of a full trial on the issues of waiver and estoppel. The equitable doctrines of estoppel and waiver are applicable in a section 301 action to enforce a labor contract. *See Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers, Local Union No. 744 v. Metropolitan Distributors, Inc.*, 763 F.2d 300, 304 (7th Cir.1985); *Hass v. Darigold Dairy Products*, 751 F.2d 1096, 1099 (9th Cir.1985). Further, estoppel and waiver involve questions of fact which should be submitted to the jury. *See Ouimette v. E.F. Hutton & Co.*, 740 F.2d 72, 76 (1st Cir.1984); *United States v. Commercial Mechanical Contractors, Inc.*, 707 F.2d 1124, 1128 (10th Cir.1982).

■ The elements constituting estoppel, as defined by federal common law, are: (1) conduct or language amounting to a representation of material facts; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on or act such that the party asserting the estoppel has a right to believe it so intended; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must detrimentally and justifiably rely on the representation. *Acri v. International Association of Machinists*, 781 F.2d 1393, 1398 (9th Cir.1986); *see also Hass*, 751 F.2d at 1099–1100. Waiver, as defined by feder-

al common law, requires an "intentional relinquishment of a known right." *Larkins v. NLRB*, 596 F.2d 240, 247 (7th Cir. 1979). Under either doctrine, imposition of liability requires proof of more than the mere fact that a representation was made. *Acri*, 781 F.2d at 1398; *Larkins*, 596 F.2d at 247.

■ The district court erroneously concluded that this court's mandate in *Apponi I*, remanding for "a jury trial as to whether the company made the representations alleged," precluded the jury's consideration of all other elements of waiver and estoppel. It has long been recognized that in determining the intent of the mandate, it is appropriate to look to the entire opinion of the court of appeals. *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 n. 2 (11th Cir.1984) (per curiam). This court, in its prior opinion, stated:

> We think that the allegations made in [plaintiffs'] affidavits present triable issues of fact. We rely on two related doctrines, waiver and estoppel. It is well settled that a party may voluntarily relinquish a known right through words or by conduct.... It is similarly settled that a party whose conduct misleads another is barred, or estopped from asserting legal rights that it otherwise could assert.... If company representatives did make the statements they were alleged to have made during the labor negotiations, then the company shall be precluded from arguing that it is not liable.

652 F.2d at 649–50 (citations and footnotes omitted). Further, this court stated in a footnote to the opinion that "issues as to waiver or estoppel are classic examples of disputed questions of fact which are amenable to decision by a jury." 652 F.2d at 651 n. 12.

Although not free from ambiguity, this court's opinion in *Apponi I* contemplated a jury trial on all the elements of waiver and estoppel. The district court's failure to follow this court's mandate requires that this case be remanded for a jury trial on those elements of waiver and estoppel not submitted to the jury in the prior proceed-

**1218**

ing. *See In re United States Steel Corp.,* 479 F.2d 489, 493–94 (6th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973).

Sunshine argues that the jury's finding that Sunshine's negotiators made the representations alleged must be set aside because the district court erroneously excluded evidence offered to prove that Sunshine's negotiators did not make the representations. Specifically, Sunshine challenges the district court's exclusion of the following evidence: (1) a 1974 letter from Joseph G. Kane, Executive Vice-President of the Bakery and Confectionary Workers International Union, to Charles Vest, a named plaintiff, stating that Vest was not entitled to pension benefits because he left Sunshine's employ prior to his fifty-fifth birthday; (2) Kay Apponi's statement that she was told by her attorney in 1972 or 1973 that her case lacked merit; (3) testimony of James K. Lawrence, a purported expert in labor relations, that plaintiffs did not exhaust available grievance and arbitration procedures, that the pension plan provided early retirement benefits only to those employees who attained age fifty-five while in Sunshine's employ, and that it was unlikely that any oral agreement between Local 310 and Sunshine would not have been integrated into the agreement; and (4) exit interview forms indicating that plaintiffs were not presently entitled to pension benefits. The district court found this evidence irrelevant and of no probative value. We agree.

Under the Federal Rules of Evidence, the district court has broad discretion in determining the relevancy and admissibility of evidence. *See United States v. Blanton,* 700 F.2d 298, 313 (6th Cir.), *adopted on reh'g,* 719 F.2d 815, 833 (6th Cir.1983), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1592, 80 L.Ed.2d 125 (1984); *United States v. Phillips,* 575 F.2d 97, 100 (6th Cir.1978); *United States v. Jenkins,* 525 F.2d 819, 824 (6th Cir.1975) (per curiam). A district court's ruling on evidentiary matters will be reversed only on a clear showing of abuse of discretion. *Blanton,* 700 F.2d at 313; *Jenkins,* 525 F.2d at 824. Similarly, the deter-

mination whether to admit expert testimony is committed to the sound discretion of the district court. *See United States v. Green,* 548 F.2d 1261, 1268 (6th Cir.1977). The district court's decision to exclude expert testimony will be sustained "unless manifestly erroneous." *Id.* (quoting *Spring Co. v. Edgar,* 99 U.S. (9 Otto) 645, 658, 25 L.Ed. 487 (1878)).

██ Evidence may be excluded as irrelevant if it is not probative of the proposition it is offered to prove. Fed.R.Evid. 401; *see also* 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5165 (1978). The Kane letter is not probative of whether the alleged representations were made because Kane was not present during the negotiations, and there is no evidence that he knew what transpired. The exit interview forms are not probative of whether the alleged representations were made because they showed only that no retirement benefits were due plaintiffs when the bakery closed and did not in any way foreclose the possibility of retirement benefits accruing at a later date. Kay Apponi's statement with regard to what she was told by her attorney is obviously not probative of whether the alleged representations were made.

Under Rule 702 of the Federal Rules of Evidence, expert testimony may be admitted if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Here, the legal conclusions of Sunshine's purported expert would not have assisted the jury's understanding of the evidence or their determination whether the representations were made. Moreover, "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." *Marx & Co. v. Diners Club, Inc.,* 550 F.2d 505, 509–10 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977). Thus, the district court's exclusion of the evidence offered was not an abuse of discretion or manifestly erroneous, and the jury's finding that the representations were made will not be disturbed.

Although the evidence excluded was not probative of whether Sunshine's negotiators made the representations alleged, it may be probative of whether there was justifiable and detrimental reliance on the part of the Union and/or the plaintiffs. On remand the jury must consider whether the representations were made by one with authority to bind Sunshine, whether the representations were assertions of opinion or of material fact, and whether the representations were intended by the speaker to be acted upon by the plaintiffs or induce them to take action which they otherwise would not have taken. The district court may need to reconsider these evidentiary rulings in light of the remand for the purpose of determining whether all the requirements of equitable estoppel have been satisfied in the case.

### E. *Special Master's Report*

Sunshine argues that the district court improperly referred the question of damages to the special master and erroneously adopted the special master's recommendation. Our decision reversing the district court's imposition of liability requires us to vacate the award of damages. Thus, review of the special master's report is unnecessary.

### III. PLAINTIFFS' APPEAL

### A. *Interpretation of the Pension Plan*

■ Plaintiffs argue that this court should construe the pension plan to confer early retirement benefits upon those employees with fifteen years of service regardless of whether they were employed at the bakery at age fifty-five. Paragraph 23 provides that "[a]n employee will be eligible to retire early, provided he is at least 55 years of age and has completed 15 or more years of continuous service." "Employee"

means "one employed by another ... for wages." Webster's New International Dictionary 742 (3d ed. 1981). "Retire" means "to withdraw from office, public station, business occupation, or active duty." *Id.* at 1939; *see also* Black's Law Dictionary 1183 (5th ed. 1979) ("retire" means "[t]o terminate employment or service upon reaching retirement age."). Those individuals who left Sunshine's employ before age fifty-five were not "employees" when they reached age fifty-five and thus could not "retire" on that date. Thus, paragraph 23 is not ambiguous, and no construction is necessary. *See Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279, 1288–89 (6th Cir.1986); *Local 783, Allied Industrial Workers v. General Electric Co.*, 471 F.2d 751, 757 (6th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973).

Moreover, plaintiffs' proposed construction would require enlargement of the class of plaintiffs beyond that certified by the district court. The district court certified a class composed of "all former employees of [Sunshine] employed at the Dayton plant thereof who prior to April 30, 1972, had completed 15 years of continuous service and had not by April 30, 1972 attained the age of 55 years." In *Apponi I,* this court stated that "[t]he plaintiff class members are former Sunshine employees who accumulated 15 or more years service with the company before losing their jobs in 1972 when Sunshine shut down its Dayton Bakery." 652 F.2d at 646. Persons who left Sunshine prior to closing of the bakery are not members of the class.[1]

### B. *Attorneys' Fees*

■ Plaintiffs argue that the district court should have granted their motions to tax their attorneys' fees against Sunshine and compel discovery of Sunshine's attorneys' fees. An appellate court has jurisdic-

---

**1.** Plaintiffs also argue that this court should construe the pension plan to confer early retirement benefits upon all former employees with fifteen years' service "regardless of whether they were members of [Local 310] to which the estoppel related." Having concluded that paragraph 23 confers early retirement benefits only upon those employees who were working at Sunshine at age fifty-five, we must also conclude that those employees who were not working at Sunshine at age fifty-five and who were not members of Local 310 are not entitled to early retirement benefits.

tion to entertain appeals only from final orders. *See* 28 U.S.C. § 1291. Attorney fee issues are subject to the "ordinary principles of finality." 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3915, at 270 (Supp.1986); *see also Fort v. Roadway Express, Inc.,* 746 F.2d 744, 747 (11th Cir.1984). Plaintiffs' motions regarding attorneys' fees, having not been ruled on by the district court, are not currently reviewable by this court.

### C. *Special Master's Fees*

■ Plaintiffs argue that the fees of the special master should have been taxed to defendant rather than split between the parties because the proceedings before the special master were necessitated by Sunshine's fraudulent denial of its obligations under the pension plan and because plaintiffs prevailed. Under Rule 53(a) of the Federal Rules of Civil Procedure, the district court may charge the special master's compensation against one or more of the parties or apportion it among them. *See Morgan v. Kerrigan,* 530 F.2d 401, 427 (1st Cir.), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2648, 49 L.Ed.2d 386 (1976); *Erickson's, Inc. v. Travelers Indemnity Co.,* 454 F.2d 884, 885 (5th Cir.), *cert. denied,* 409 U.S. 847, 93 S.Ct. 51, 34 L.Ed.2d 87 (1972). The district court has broad discretion to determine which of the parties to charge, and the district court's decision will not be disturbed absent an abuse of that discretion. *Morgan,* 530 F.2d at 427.

Contrary to plaintiffs' argument, the record does not contain any indication that Sunshine has acted fraudulently. Plaintiffs' fraud claims were dismissed shortly after this action was filed. Further, assessment of a portion of the special master's fees against the prevailing party does not constitute a per se abuse of discretion. See *Dyker Building Co. v. United States,* 182 F.2d 85, 89 (D.C.Cir.1950). Plaintiffs have not shown any basis for concluding that the district court abused its discretion, and the taxing of the special master's fees by the district court is affirmed.

### IV.

For the reasons stated above, we REVERSE in part and REMAND to the district court for a jury trial on those elements of waiver and estoppel not previously submitted to the jury. However, having concluded that the jury's determination that Sunshine's negotiators made the representations alleged is free from error, that determination is binding upon the parties. On remand, the district court shall instruct the jury that the representations were made.