844 F.2d 789
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James A. SALISBURY, Chairman; George Moore, David M.
Laplante, Steven O. Klorer, Kenneth Campbell, George F.
Peters, as Trustees of Toledo Plumbers & Pipefitters Local
50 Pension Plan & Trust, Retirement Plan & Trust, Health &
Welfare Plan & Trust and Savings Plan and Trust; Local
1076, International Brotherhood of Electrical Workeres;
Local 50, United Association of Journeymen & Apprentices of
the Plumbing and Pipefitting Industry, Plaintiffs-Appellees,
v.
KROYER HEATING & AIR CONDITIONING, INC., Defendant-Appellant.
 No. 87-3446.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1988.
 
 Before KEITH, BOYCE F. MARTIN Jr., and RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant, Kroyer Heating & Air Conditioning, Inc. (Kroyer), appeals the order of the district court[1] granting plaintiffs' motions for summary judgment and denying Kroyer's motion for summary judgment. Plaintiffs Trustees of the Toledo Plumbers & Pipefitters Local No. 50 Pension Plan and Trust, Health & Welfare Plan & Trust, and Savings Plan & Trust (Trustees) brought this action pursuant to Sec. 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1145, and Sec. 301 of the Labor-Management Relations Act of 1947 (LMRA), as amended, 29 U.S.C. Sec. 185, alleging that Kroyer has failed to submit timely payroll reports and data concerning hired employees, and that Kroyer is delinquent in contributing to benefit plans. Plaintiffs International Brotherhood of Electrical Workers, Local No. 1076, and United Association of Journeymen of Apprentices of the Plumbing & Pipefitting Industry, Local No. 50 (Unions) filed suit pursuant to Sec. 301 of the LMRA, Sec. 2 of the United States Arbitration Act, 9 U.S.C. Sec. 2, and Sec. 2711.01, Ohio Rev. Code, requesting enforcement of an arbitration decision entered May 17, 1985, which concluded that Kroyer had violated the master contract, ordered an audit, and required compensation for the hiring of non-union labor.
 
 
 2
 Kroyer's defense was, and is, that it is not bound by the master contracts in effect at the relevant time. The court below found that Kroyer was so bound. For the following reasons, we AFFIRM.
 
 I.
 
 3
 On September 29, 1976, Kroyer, by and through its President, Paul Kroyer, signed an "Assent to Collective Bargaining Agreement" (Assent Agreement), through which Kroyer agreed to be bound by the master contract negotiated between the Toledo Heating & Air Conditioning Contractors Association (Association) and the Unions. The Assent Agreement provided that:
 
 
 4
 In consideration of the benefits to be derived and other good and valuable consideration, the undersigned Employer does hereby join in, adopt, accept and become a party to the collective bargaining agreement heretofore made by the Toledo Heating and Air Conditioning Contractors Association with Local Union No. 50, United Association and Local Union No. 1076, I.B.E.W., including all of the provisions therein and any amendments made thereto, and including those provisions pertaining to contributions to Trust Funds, and agrees to be bound by any Trust Agreement hereafter entered into between these parties and agrees to make contributions as required, and authorizes these parties to name the Trustees to administer said Funds and ratifies and accepts such Trustees and the terms and conditions of the Trusts as if made by the undersigned. This assent shall remain in effect until giving written notice to the parties not less than 150 days prior to the then current expiration date of this Agreement.
 
 
 5
 At the time that Kroyer signed the Assent Agreement, a master contract was in place, which was in effect from July 1, 1976 through June 30, 1979.[2] Article XXVII of this collective bargaining agreement provided, in relevant part, that:
 
 
 6
 This agreement shall be in full force and effect from July 1, 1976 to and including June 30, 1979 and from year to year thereafter, unless either party notifies the other in writing at least one hundred fifty (150) days prior to any annual date of expiration that a change in terms is requested; provided however that each party may mutually agree to alter or amend this agreement at any time.[3]
 
 
 7
 On September 8, 1980, Kroyer filed a petition for reorganization under Chapter 11 in the bankruptcy court. On October 20, 1981, that court confirmed a modified reorganization plan. Article 4 of that plan stated that all employment contracts signed by Kroyer had expired, and that Kroyer rejected any obligations thereunder. It is undisputed that no notice of the provisions of this Article was given to the Unions or Trustees.
 
 
 8
 On May 1, 1985, Local No. 50 filed a grievance pursuant to the grievance procedure outlined in Article XIII of the master contract. The grievance alleged that Kroyer had hired two non-union workers when the master contract dictated that only union workers be used. Ultimately, the dispute was arbitrated, and the Board of Arbitration found in favor of the grievants.[4] The district court enforced the arbitration award, and granted summary judgment for the Trustees and Unions, concluding that (1) by the terms of the Assent Agreement, Kroyer was bound by the master contracts in effect since 1979; (2) in any event, by continuing to operate as if the contracts were still in effect, Kroyer was estopped by its conduct from claiming that it was not so bound; and (3) plaintiffs were not bound by the bankruptcy court order because no notice was given.
 
 II.
 
 9
 Kroyer argues that, by the terms of the Assent Agreement, it was bound by the master contract which was in force at that time, but was not bound by successive agreements. In support of its contention, Kroyer cites the following language:
 
 
 10
 ... the undersigned Employer does hereby join in, adopt, accept and become a party to the collective bargaining agreement heretofore made by the Toledo Heating and Air Conditioning Contractors Association with Local Union No. 50, United Association and Local Union No. 1076, I.B.E.W., including all of the provisions therein and any amendments made thereto ... (emphasis supplied by appellant).
 
 
 11
 Of course, the Assent Agreement concludes with the following notice provision:
 
 
 12
 ... This assent shall remain in effect until giving written notice to the parties not less than 150 days prior to the then current expiration date of this Agreement ...
 
 
 13
 For purposes of this appeal, we will assume arguendo that there may be some ambiguity caused by the coexistence of these two provisions,[5] for we conclude that Kroyer is estopped by its conduct from now arguing that it was not bound by successor contracts.
 
 
 14
 "It is well established that a collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound; rather, all that is required is conduct manifesting an intention to abide and be bound by the terms of the agreement." Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 373 (7th Cir.1985); NLRB v. Haberman Construction Co., 641 F.2d 351, 355-56 (5th Cir.1981).
 
 
 15
 As the district court summarized, Kroyer behaved as one who was bound by the collective bargaining agreement:
 
 
 16
 It is undisputed that defendant never terminated the assent agreement nor gave notice of an intent not to be bound by the master contract. (Curley Aff. at p 3; Kevin Smith Aff. at p 4). Defendant continued to send payroll reports required by the master contract to one union through January 1983 (Frazier Aff. at p 4), and to the other union through January 1985. (Curley Aff. at p 5). Defendant paid contributions totaling an amount in excess of $11,000.00 into the benefit plans fund on behalf of several employees from January 1981 through July 1982. (Ex. A-Q2 attached to Frazier Aff.). At defendant's request, in accordance with the master contract, one union referred an employee to defendant in January 1982, although that employee worked at defendant less than one month. (Curley Aff. at p 6; Kroyer January 10, 1986 Aff. at p 6). Defendant attended a grievance hearing pursuant to the master contract on April 19, 1982. (Curley Aff. at p 7). Defendant exchanged correspondence in 1983 regarding submission of payroll reports under the master contract. (Curley Aff. at paragraphs 8-9).
 
 
 17
 Memorandum and Order of December 1, 1986 at 8.
 
 
 18
 We are particularly persuaded that the application of estoppel against Kroyer is justified after reviewing the text of the "Heating & Air Conditioning and Refrigeration Referral Statement" which Kroyer signed in connection with the referral referenced by the district court:
 
 
 19
 By accepting the above named individual for employment I agree to remain bound by or become bound by the collective bargaining agreement between Toledo Heating & Air Conditioning Association and International Brotherhood of Electrical Workers, Local Union 1076 and United Association of Plumbers and Steamfitters Local No. 50. I further agree to abide by all of its terms and conditions and to transmit all monies due to the unions pursuant to the agreement. (emphasis added).
 
 
 20
 Although the district court did not precisely state the elements of estoppel which it relied upon, it did note in its memorandum and order granting Kroyer's motion to amend that:
 
 
 21
 ... application of the doctrine of estoppel in this case rests on grounds for which there is difference of opinion. Kroyer relies on a five-part test dictating application of estoppel. See Minnesota Mining & Manufacturing Co. v. Blume, 533 F.Supp. 493, 517 (S.D. Ohio 1978), aff'd, 684 F.2d 1166 (6th Cir.1982), cert. denied, 460 U.S. 1047 (1983) (the court of appeals did not reach the district court's use of the five-part test). This Court declined to follow Blume. In the event of an appellate decision requiring this court to follow Blume it may be found that the facts of this case fail such a stringent test.
 
 
 22
 Memorandum and Opinion Granting Motion to Amend at 7.
 
 
 23
 The Unions argue that the proper test for applying estoppel in this context is to be derived from the federal common law in labor cases, and cite the elements listed in Audit Services, Inc. v. Rolfson, 641 F.2d 757, 762 (9th Cir.1981); therefore, the unions contend that the district court was correct in declining to follow Blume, which was a patent litigation.
 
 
 24
 We see no reason to list the Blume or Rolfson elements, for there is a clear and recent statement of the law in this circuit in this area, which is found in Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210 (6th Cir.), cert. denied, 108 S.Ct. 77 (1987):
 
 
 25
 The elements constituting estoppel, as defined by federal common law, are: (1) conduct or language amounting to a representation of material facts; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on or act such that the party asserting the estoppel has a right to believe it so intended; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must detrimentally and justifiably rely on the representation.
 
 
 26
 809 F.2d at 1217 (citations omitted).[6] Based on this test, the district court did not abuse its discretion in concluding that Kroyer was estopped from denying the validity of the collective bargaining agreements.
 
 III.
 
 27
 We agree with the district court's view, expressed in its Memorandum and Opinion granting Kroyer's motion to amend, that there is no substantial ground for difference of opinion on the issue of whether the Unions or Trustees were bound by the October 20, 1081 bankruptcy court order. The benefits of an employment contract represent important and substantial rights, which cannot be taken away without notice and an opportunity to be heard. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Moreover, because the Unions and Trustees were strangers to the bankruptcy litigation, they are not precluded by the doctrine of res judicata from litigating this issue. Davis v. McKinnon and Mooney, 266 F.2d 870, 873 (6th Cir.1959).
 
 
 28
 Kroyer does not argue that the Unions and Trustees received notice, but only that they could not collaterally attack a finding of proper jurisdiction in the district court; instead, they were required to petition the bankruptcy court or "some proper appellate court," citing Stoll v. Gottlieb, 305 U.S. 165, reh'g. denied, 305 U.S. 675 (1938). However, Kroyer's reliance on Stoll is misplaced, for in that case, the party challenging jurisdiction had received notice but chose not to appear. 305 U.S. at 169. Without notice, the Unions and Trustees cannot be bound by an adjudication of jurisdiction which effectively disposes of their claim.
 
 IV.
 
 29
 For the foregoing reasons, the judgment of the Honorable Nicholas T. Walinski, United States District Court, Northern District of Ohio, is AFFIRMED.
 
 
 
 [1]
 Because the hearing on damages has not yet taken place, Kroyer filed a motion requesting that the district court amend its order to include a certification of appeal pursuant to 28 U.S.C. Sec. 1292(b). That motion was granted, and this Court granted permission to appeal
 
 
 [2]
 Kroyer does not dispute that it was bound by this agreement
 
 
 [3]
 Two successor master contracts were negotiated between the Association and the Unions, which covered the period between July 1, 1979 and June 30, 1985
 
 
 [4]
 Kroyer did not participate in the grievance hearing, contending that the order of the bankruptcy court absolved it of any obligations under the master contract
 
 
 [5]
 We note that the "ambiguity" here is not particularly striking or compelling. Nevertheless, from one view, one could conclude that it exists
 
 
 [6]
 The Apponi elements are, in sum, virtually identical to those stated in Rolfson