7 F.3d 233
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marjorie JOHNSON, Plaintiff-Appellant,
v.
MICHIGAN CONFERENCE OF TEAMSTERS, WELFARE FUND; A.F.
Happensack; Donald A. Ward, Defendants-Appellees.
 No. 92-2135.
 United States Court of Appeals, Sixth Circuit.
 Oct. 4, 1993.
 
 Before: MILBURN and GUY, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Marjorie Johnson, sued the defendant Welfare Fund claiming it should have paid the hospital bills she incurred for a lumbar disectomy. Defendant, although providing health coverage to plaintiff, excluded health care costs resulting from a work-related injury.
 
 
 2
 The district court granted summary judgment to the Fund, concluding that the injury necessitating the surgery was work related and that the Fund was not estopped from denying coverage as alleged by the plaintiff.[1] Plaintiff appealed. Upon a review of the record, we agree and affirm on the basis of Judge Cook's opinion, which fully explored the two issues raised by the plaintiff in the district court and which are the same two issues she now raises on appeal. We write additionally only for clarification of our holding.
 
 I.
 
 3
 On November 13, 1985, Johnson injured her lower back at work while bending over and picking up a heavy box. Johnson sought medical treatment and did not return to work. She received workers' compensation benefits of $261 per week, and her medical bills were paid by her employer's compensation carrier.
 
 
 4
 In September 1987, the carrier discontinued Johnson's benefits, resulting in Johnson's retaining an attorney and seeking resumption of her benefits. In February 1989, the parties resolved their dispute; a redemption order was entered according Johnson a single lump sum payment of $60,617.29 and ordering the payment of her weekly compensation benefits until February 16, 1989.
 
 
 5
 During her employment, Johnson also was enrolled in the defendant's health and welfare plan. When the compensation carrier discontinued payments, Johnson looked to this Fund for payment. The Fund paid some medical bills, including those for x-rays and a myelogram performed on October 24, 1988.
 
 
 6
 When the myelogram confirmed lumbar disc herniations, surgery was recommended. Dr. Ho, who was to perform the surgery, sent a hospital pre-admission form to the Fund for approval. The top of the form submitted bore the legend "Void if Workmen's Comp." Under the pre-authorization program in place, the hospital would not bill Blue Cross-Blue Shield until the Fund's Utilization Review Department approved the length of the hospital stay.[2] The Fund approved two days of hospitalization. On December 29, 1988, Johnson was admitted to William Beaumont Hospital for removal of a lumbar disc.
 
 
 7
 Since the hospital stay exceeded the pre-authorized two days, the hospital was required to submit additional medical information to the Fund. Shortly thereafter, in response to an inquiry from the Fund relative to other insurance carried, Johnson reported she had received workers' compensation benefits as a result of her back injury and that payments had ended in September 1987. This information, coupled with the additional information supplied by Beaumont Hospital, caused the Fund to conclude that Johnson's injury was work related and, accordingly, it denied all coverage. The hospital then billed Johnson, who resubmitted her claim to the Fund through an attorney. The claim was rejected and no administrative appeal to the Fund's board of trustees was taken. However, on July 23, 1991, Johnson instituted this action.
 
 
 8
 After discovery, the Fund sought summary judgment. On June 22, 1992, the court granted defendant's motion, finding there was no evidence in the record from which it could be concluded that plaintiff's back injury and subsequent surgery were other than work related. The trial judge also found that plaintiff could not prevail on her estoppel theory because she could not satisfy the elements of estoppel.
 
 II.
 
 9
 We have little to add to what the trial court said relative to the origin of plaintiff's injury. There is no doubt plaintiff suffered a back injury at work serious enough that she never returned to work, and for which she received three and one-half years of weekly compensation benefits and a lump sum redemption of $60,617.29.[3] In the face of this overwhelming evidence, plaintiff does little more than suggest that the therapy she received following her back injury somehow was responsible for the surgery and not the work-related injury itself. On the record before the trial judge, summary judgment was clearly appropriate on this issue.
 
 III.
 
 10
 On appeal, the Fund seeks to have this court reject plaintiff's estoppel theory by adopting the principle that estoppel is never applicable to alter the written terms of a multi-employer ERISA welfare plan such as was involved here. We earlier have recognized that estoppel was applicable in the context of a single-employer, unfunded, ERISA welfare benefit plan. Armistead v. Vernitron Corp., 944 F.2d 1287, 1300 (6th Cir.1991). However, in Armistead, we specifically declined to express an opinion relative to the multi-employer context. Because we agree with the district judge that plaintiff cannot satisfy the elements of estoppel, we find it unnecessary to adopt the per se rule urged by the Fund.
 
 
 11
 In Armistead, we discussed the doctrine of equitable estoppel:
 
 
 12
 Both the LMRA and ERISA authorize the federal courts to fashion a body of federal common law to enforce the agreement that these statutes bring within their jurisdiction. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 403, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988). In Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1217 (6th Cir.1987), this circuit incorporated the doctrine of equitable estoppel into the federal common law of contracts, at least in so far as the agreement at issue is before the federal courts under the LMRA. The elements of equitable estoppel are:
 
 
 13
 1) conduct or language amounting to a representation of material fact;
 
 
 14
 2) awareness of the true facts by the party to be estopped;
 
 
 15
 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;
 
 
 16
 4) unawareness of the true facts by the party asserting the estoppel; and
 
 
 17
 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.
 
 
 18
 944 F.2d at 1298.
 
 
 19
 When Johnson's estoppel theory is viewed in the context of this test, it falls short in several particulars. Johnson can satisfy the first and third prongs. The Fund did lead her to believe it would pay for at least two days of hospitalization. However, when the Fund authorized her admission into the hospital, it was unaware of the full facts surrounding plaintiff's injury, so Johnson cannot satisfy the second part of the test. Additionally, Johnson was aware of the true facts, so she also fails to meet the fourth requirement. Finally, it is debatable whether Johnson meets the reliance prong. It would appear clear that she needed the surgery and she had the money to pay for it, so it is impossible to conclude, but for the pre-admission authorization by the Fund, Johnson would not have had the surgery.
 
 IV.
 
 20
 The Fund seeks double attorney fees and costs, claiming that appeal is frivolous under Federal Rule of Appellate Procedure 38. Although it is a close call, we reject the suggestion that this appeal is frivolous. Although the assertion that the surgery did not result from a work-related injury is hardly plausible, we find the assertion of the estoppel theory to be legitimate, albeit unsuccessful. The Fund had paid a number of her bills already and, arguably, Johnson might have negotiated a larger redemption if she could have demonstrated her upcoming medical bills would not be paid. Under these circumstances we feel it is inappropriate to impose a sanction.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 When we say the court "concluded" plaintiff's injury was work related, we do not mean it impermissibly made findings of fact but, rather, that the trial judge properly concluded the plaintiff had failed "to make a showing sufficient to establish the existence of an element essential to [her] case and on which [she bore] the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)
 
 
 [2]
 Blue Cross-Blue Shield and the Fund were parties to an administrative services contract under which Blue Cross-Blue Shield processed the Fund's hospital benefit claims
 
 
 [3]
 It is not possible from the record to determine when, if ever, Johnson would have returned to work, because at some point after her injury occurred she was laid off by her employer for reasons unconnected with her injury