Edith M. **SHEPHERD**, et al., Plaintiffs,

v.

**BOISE CASCADE CORPORATION, Defendant.**

**Civ. A. No. C 89–0252–L(A).**

United States District Court, W.D. Kentucky, at Louisville.

May 30, 1990.

---

Charles C. McConnell, Louisville, Ky., for plaintiffs.

Richard S. Cleary, Greenebaum Doll & McDonald, Louisville, Ky., Karl B. Brooks, Associate Gen. Counsel, Boise Cascade Corp., Boise, Idaho, for defendant.

## MEMORANDUM OPINION

ALLEN, Senior District Judge.

This action is submitted to the Court on defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. We agree that there is no genuine dispute of material fact, and, for the reasons set forth below, the Court will grant the defendant's motion.

Plaintiffs, three individual members of the American Federation of Grain Millers (AFL–CIO) International Union No. 33 [the Union], bring this action under the Employee Retirement Income Security Act of 1974 [ERISA], 29 U.S.C. § 1001 *et seq.;* § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

Defendant employed plaintiffs at its Consumer Packaging Division Plant in New Albany, Indiana, a facility defendant sold to Sonoco Products Company (Sonoco) on April 1, 1987. The parties have stipulated that on March 31, 1987, all employees at the plant "involuntarily separated employment from Boise Cascade and all employees' accrual of service in [the pension plan] terminated." On April 1, 1987, all employees at the plant became employees of Sonoco. Neither the Union nor Sonoco is party to this suit.

Beginning in the mid–1970's, defendant and the Union entered into a series of collective bargaining agreements, each of

which has incorporated a pension plan (the Plan) established pursuant to ERISA. The Plan provides, in part, that any employee of the defendant who has worked at least 20 years for the defendant and who has attained age 62 is entitled to early retirement benefits. As of March 31, 1987, each of the plaintiffs had at least 20 years of credited service, but none had attained age 62.

Plaintiffs contend that under the terms of the Boise agreements, they are entitled to receive from Boise full retirement benefits when they attain the age of 62, regardless of whether they are then unemployed or working for a different employer. They contend that the sale of the plant deprived them of the right to be employees of defendant when they reach age 62.

Defendant presents three arguments in support of its motion for summary judgment. First, defendant contends that suit is barred by plaintiffs' failure to invoke the grievance resolution mechanism set out in Article 8 of the collective bargaining agreement. Second, defendant argues that suit is barred by plaintiffs' failure to file any claim with the pension committee or pursue the appeal procedures set out in the Plan.

Finally, defendant contend that even if suit is properly brought in this Court without exhaustion of either the arbitration proceedings or the pension appeal proceedings, the language of the Plan is clear and requires that plaintiffs be employed by defendant at the time that they become otherwise qualified for benefits at age 62 after 20 years of service. However, defendant is not taking the view that a plaintiff who has worked for 20 years for Boise and who has reached the age of 62 while in the employment of Sonoco is not entitled to early retirement pension benefits. On the contrary, defendant states that these employees are entitled to early pension benefits so that the only practical issue presented is whether or not plaintiffs are correct in contending that they would have satisfied all prerequisites to full retirement benefits by completing twenty years of credited service with defendant, and by attaining the age of 62, regardless of their employment status at age 62.

The labor agreements between the parties provide that Boise Pension Plan "C" shall remain in effect during the term of the agreement; therefore, it appears that the pension was one of the subjects of collective bargaining. Plaintiffs argue that what they bargained for was full retirement benefits at age 62, conditioned only on completion of twenty years with Boise, and that defendant's current interpretation deprives them of the benefit of their bargain.

One of the summaries of the Plan states as follows, at pages 23 and 24:

The company has adopted an appeal procedure. If your claim for a pension benefit is denied in whole or in part, you will receive a written explanation of the reason for denial. If you feel your claim has been improperly denied, you may request a review of your claim.

The plan also advises the employee to contact the U.S. Department of Labor "if you do not agree with the Retirement Committee's final review of your claim."

Article 8 of the collective bargaining agreement sets out a grievance resolution mechanism in the following language:

All questions as to interpretation or meaning of this Agreement, or of the application of the terms of this Agreement to such facts as may arise together with all such grievances, shall be subject to arbitration or conciliation as hereinafter set out.

It is undisputed that the plaintiffs at no time invoked either the arbitration provision of the collective bargaining agreement set out in Article 8, nor did they make any claim with the Pension Plan Committee concerning their theory that their irrevocable entitlement to full pension benefits, payable at age 62, vested as of the date when Boise sold the plant to Sonoco.

Plaintiffs have taken the position that it would have been futile to attempt to arbitrate their grievances with defendant. In May 1987, Union representatives attended a meeting with members of Sonoco management, including the former Boise

plant manager, the former Boise plant supervisor, the former Boise chief labor relations person, and the former Boise chief bargaining agreement negotiator. At that meeting, the Sonoco labor relations agent, Mrs. Stranere, advised the group that Sonoco could not address the question and that the Union would have to deal with Boise Cascade. The affidavits indicate that Sonoco management (Boise's former management people) did not discuss the complaints about the early retirement benefits with the Union.

■ The law is clear that plaintiffs must seek arbitration before bringing suit in this Court unless their employer has repudiated the arbitration mechanism set out in the contract, *see Glover v. St. Louis–San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), or the union has wrongfully refused to process the agreement in violation of its duty of fair representation, *see Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

In *Anderson v. Ideal Basic Industries*, 804 F.2d 950 (6th Cir.1986), the court addressed circumstances in which the plaintiff union members had been working for appellees. In 1983 when appellee announced its intention to sell its Knoxville, Tennessee plant to Moore McCormack, the union and the appellee's officials reached an agreement which provided continued employment for the union members with the new company. Subsequently, members of the union filed suit complaining that the closeout agreement between the union and the company deprived them of certain benefits which were part of the collective bargaining agreement with appellee. The Court of Appeals and the District Court both held that the union members, who had never filed a grievance until two weeks before they filed the law suit, did not exhaust the grievance procedures of the collective bargaining agreement. The Court held that it was "spurious for the members to claim that Ideal's conduct amounted to a repudiation of the grievance procedure."

Plaintiffs contend that the Union's meeting with the company management repre-

sentatives constituted an attempt to invoke the grievance procedure, and that the defendant's conduct at the meeting amounted to a repudiation of the grievance procedure or made a resort to it futile. As authority for their position, plaintiffs cite *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210 (6th Cir.1987). The collective bargaining agreement in that case required arbitration as to any difference of opinion with regard to the effect of the agreement. The employees there were also covered by a collectively bargained pension plan that gave to the pension administrative committee exclusive authority to determine questions arising in the administration of the plan. The collective bargaining agreement did not contain any provisions for pension benefits nor did it incorporate the pension plan by reference. The court held that since "the collective bargaining agreement and pension plan did not permit or require grievance and arbitration of disputes arising under the pension plan, plaintiffs' claims should not be dismissed for failure to exhaust contractual remedies."

In *Brown v. Babcock and Wilcox Co.*, 589 F.Supp. 64 (S.D.Ga.1984), Chief Judge Alaimo was faced with a somewhat similar problem. He held that if there is both a collective bargaining agreement requiring arbitration and a pension plan that makes no specific reference to the grievance procedure contained in the collective bargaining agreement, union members are not required to go through both the pension plan remedies and the arbitration procedure as a prerequisite to Court review.

■ In contrast to the situation in *Apponi*, the Plan in our case is explicitly incorporated into the collective bargaining agreements. This would suggest that a dissatisfied participant could elect either the grievance procedure or the Plan review procedure. The Supreme Court has recently established that a court reviewing denial of ERISA benefits must use a "de novo" standard, rather than an "arbitrary and capricious" standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). While this does not necessarily require avoiding

customary collective bargaining remedies, including binding arbitration, we believe that it suggests a preference for the explicit ERISA review procedure, at least in a case such as this one, in which both prelitigative procedures appear to be available. Additionally, we believe there is some significance to the fact that even an employee benefit plan established in conformity with the Labor Management Relations Act may not be reviewed for "reasonableness," the sole question being whether the contractual language has been applied. *UMWA Health and Retirement Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982).

Furthermore, the statutory language explaining judicial procedures, the Plan language concerning a review committee, and the unchallenged Plan summary documents setting out the procedure, all lend weight to the position that any grievances arising under the plan would be subject to the review committee's determination and not subject to arbitration. Accordingly, we hold that plaintiffs were not required to exhaust the collective bargaining grievance procedure prior to instituting this suit.

In support of their contention that exhaustion of Plan remedies is not required in this case, plaintiffs rely upon *Janowski v. International Brotherhood of Teamsters*, 673 F.2d 931 (7th Cir.1982). The *Janowski* court noted that the exhaustion doctrine under ERISA is not absolute, and is subject to the sound discretion of the court. Furthermore, a participant may bring an civil action under 29 U.S.C. § 1132 to clarify his or her rights to future benefits under the terms of the plan. In affirming the maintenance of the suit without exhaustion, the appellate court observed that the case involved clarification of the right of an entire class to future benefits, and the exhaustion doctrine has its greatest utility in ERISA cases in circumstances in which the individual has applied for and been denied current benefits. As the court pointed out, "[e]xhaustion has no relevance here, for the doctrine is only appropriate where it is necessary to develop a full factual record or to take advantage of agency expertise." *Janowski*, 673 F.2d at 935, citing *Alekna-gik Natives Ltd. v. Andrus*, 648 F.2d 496 (9th Cir.1980).

■ The same is true in our case. Plaintiffs are asserting a class-applicable position that would have required the pension board to consider only the meaning of the Plan language, and would not have required the development of a factual record subject to controversy. The parties have stipulated concerning the length of credited service and the ages of the plaintiffs, and these are the only relevant facts. Where the only controversy is a matter of Plan interpretation, and the decision would have class applicability, the Court may properly waive the exhaustion requirement, and we do so in this case.

We turn now to the merits. Defendant contends that there is no factual dispute, and that it is entitled to judgment as a matter of law because of the clear and unambiguous language of the Plan. We agree.

Defendant's motion is supported by *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d at 1219. The court considered a pension plan that conferred early retirement benefits on employees who were at least 55 years of age and had completed 15 or more years of continuous service. Like the plaintiffs here, the *Apponi* plaintiffs argued that "the court should construe the plan to confer early retirement benefits upon these employees with 15 years service regardless of whether they were employed by the bakery at age 55." The court held that "those individuals who left Sunshine's employ before age fifty-five were not 'employees' when they reached age fifty-five and thus could not 'retire' on that date." As stated there, that paragraph was unambiguous and required no construction. Accord, *Moehle v. NL Industries, Inc.*, 646 F.Supp. 769 (E.D.Mo.1986), aff'd, 845 F.2d 1027 (8th Cir.1988).

■ The same is true in our case. The paragraph as to early retirement pension benefits is unambiguous and clearly provides that early retirement was available to *employees* of Boise who had completed 20 years of service and had reached age 62.

As plaintiffs had not satisfied both of these conditions at the time of the sale of the plant, they were not entitled to pension benefits at that time, and, as they will not be employees of Boise at the time they become 62, they will not be entitled to pension benefits from Boise at that time.

Plaintiffs contend, however, that this result is inappropriate because defendant's own actions in selling the plant made it impossible for them to be employees of Boise at the age of 62. We disagree. The cases cited by plaintiffs are readily distinguishable from the case at bar. Plaintiffs have offered nothing by way of either pleading or potential evidence that in any way suggests that defendant sold the plant for the purpose of avoiding payment of pensions to plaintiffs. Cf. *Nemeth v. Clark Equipment Co.*, 677 F.Supp. 899 (W.D.Mich.1987).

Neither is there any suggestion, by pleading or by potential evidence, that the defendant had previously paid early retirement benefits to persons who reached the age of 62 and who had twenty years of service, but who were not employees of defendant at the time they attained the age of 62. Thus, we have no issue of common law contract. Cf. *Petrella v. NL Industries, Inc.*, 529 F.Supp. 1357 (D.N.J.1982).

The affidavits submitted to the Court indicate that the plaintiffs are now employed by Sonoco. There is nothing that indicates that any employee of Boise Cascade who wished to work for Sonoco was denied that privilege. Therefore, in light of that factual situation, and in light of the further declarations by defendant that there is an existing agreement between it and Sonoco which binds Sonoco to pay pension benefits to any members of the plaintiff class who have reached age 62 and who have 20 years of combined service with Boise Cascade and Sonoco, defendant Boise Cascade is entitled to summary judgment.