Donald **GOULD**, Alfred Evans and Michael McCreery, Plaintiffs,

v.

**GTE NORTH INCORPORATED, GTE** Service Corporation, and GTE North Incorporated Pension Plan for Hourly–Paid Employees of Michigan, Defendants.

No. 1:97–cv–524.

United States District Court, W.D. Michigan, Southern Division.

Feb. 19, 1999.

---

Henry L. Guikema, Henry L. Guikema, PC, Grand Rapids, MI, for plaintiffs.

William H. Keating, GTE North Inc., Marion, OH, Karen M. Wahle, O'Melveny & Myers, LLP, Washington, DC, for defendants.

## OPINION

HILLMAN, Senior District Judge.

This is an action filed by three hourly employees of defendant GTE North, Inc., pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 132(a), and the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiffs allege that defendants breached their fiduciary duty to administer the pension plan and early retirement program and unlawfully denied benefits offered in plan documents. The matter presently is before the court on defendants' motion to dismiss for lack of administrative exhaustion and cross-motions for summary judgment.

## I. *BACKGROUND*

The chronology of events underlying this action is essentially undisputed. Plaintiffs Donald Gould, Alfred Evans and Michael McCreery are hourly employees of defendant GTE North, Inc. ("GTE"). For purposes of collective bargaining, plaintiffs are represented by the International Brotherhood of Electrical Workers ("IBEW"), Local 1106. In accordance with their collective bargaining agreement, plaintiffs are entitled to participate in the GTE North Incorporated Pension Plan for Hourly-Paid Employees of Michigan ("GTE Pension Plan" or "Plan"). Defendant GTE Service Corporation ("GTE Service"), through its Employee Benefits Committee, is the administrator of the Plan. Plaintiffs have brought suit against GTE, GTE Service, and the GTE Pension Plan, alleging that defendants breached their duties to plaintiffs and violated the terms of the Plan when they failed to permit plaintiffs to participate in an early retirement incentive program.

The early retirement incentive plan at issue is the Enhanced Employer Adjustment Income Plan ("Enhanced EAIP") that was offered by GTE in the fall of 1996. Specifically, on September 19, 1996, GTE entered into a Memorandum Agreement ("the Agreement") with the IBEW. *See* Complaint, Ex. A. In that Agreement, GTE was permitted to amend the company's pension plan for hourly employees to provide certain early retirement benefits. Those benefits were to be made available to employees who had at least 15 years of service with GTE and whose age added to his or her years of service equaled at least 76 years. The Agreement provided that GTE could at its sole discretion determine which work groups, locations and numbers of employees would be permitted to receive the benefits. All eligible employees were to be notified by the company of the Enhanced EAIP, which could be elected by the employees only between October 16, 1996 and October 30, 1996. Employees who elected to participate were to retire on December 6, 1996, or not later than June 6, 1997 if they were determined by the company to be Critical Skills Employees.

Later in September 1996, GTE published a 15-page booklet entitled "Benefits Highlights: 1996 Enhanced Employee Adjustment Income Plan." *See* Complaint, Ex. B. The Benefits Highlights document, together with a cover letter and decision form, was mailed on October 14, 1996 to employees who met the service years/age requirements and who were within the work groups and locations identified by GTE. The Benefits Highlights booklet contained the following paragraph on the introductory page:

> Every effort has been made to make the information in this booklet as accurate as possible. The amount and availability of benefits are governed by the provisions of the Pension Plan document, including the Enhanced EAIP provisions. This booklet supplements information provided in the Pension Plan Summary Plan Description, the benefits you receive will be determined under the terms of the Pension Plan, including the Enhanced EAIP provisions in effect on your termination date.

Complaint, Ex. B.

The decision form sent to plaintiffs with the Benefits Highlights brochure included a section entitled "Acceptance," which contained the following acknowledgment by the signing employee:

> I am eligible for and wish to accept the 1996 Enhanced EAIP. I understand that my termination date will be December 6, 1996, or my "Critical Skills" termination date. I understand that my pension payments are scheduled to commence on January 1, 1997, or the first month following my "Critical Skills" termination date. I also understand that I may be paid at a later date. I understand that although I will be paid for unused, accrued and banked vacation days, if applicable, this time will not add any service or salary to my pension benefit beyond

December 6, 1996, or my "Critical Skills" termination date. If I have previously initiated my "Intent to Retire," I understand that it is revoked upon my acceptance of the 1996 Enhanced EAIP. I acknowledge that I have read and understand the 1996 EAIP materials provided to me including the GTE Telephone Operations Benefits Highlights booklet for the 1996 Enhanced Employee Adjustment Income Plan, that this decision is voluntary on my part and that after my termination date, my decision to accept the program is final.

I further understand that I have the right to rescind this acceptance to participate in the 1996 Enhanced EAIP, in writing, anytime prior to my termination date; however, GTE is under no obligation to guarantee the continuation of my employment.

Complaint, Ex. C. The Benefits Highlights brochure contained no references to the existence of limitations on the numbers of eligible employees who could participate. However, the Benefits Highlights mailing contained a cover letter signed by GTE's Regional Director for Human Resources, Holiday Parker. That cover letter stated that "GTE may limit the number of employees allowed to accept this offer." Pl. Ex. 5.

Plaintiffs Evans and Gould received the mailing; plaintiff McCreery did not receive the mailing. Evans and Gould accepted on October 29 and October 28, 1996, respectively. On October 30, the period for submitting a decision form expired. In November 1996, all three were advised by GTE that they did not qualify for the voluntary early retirement program.

On December 13, 1996, a week after the effective date of the accepting employees' terminations, the company amended the pension plan retroactive to October 15, 1996, by adopting a new Article XX entitled "Enhanced Employee Adjustment Income Program (1996)." In that amendment, the company provided that certain caps would be applied to each position in the company. The amendment further provided that if more than the capped number of employees in a position sought to exercise their option under the EAIP, seniority would determine who was allowed to retire.

Plaintiffs have raised somewhat different claims in their complaint. All plaintiffs contend that, under the plan as described in the "Benefits Highlights," each was entitled to exercise the option for early retirement and the company should not thereafter be allowed to retroactively amend its offer to place limits on the numbers in each area who would be allowed to exercise the option. In addition, plaintiff McCreery alleges that he was not offered the opportunity to retire under the plan enhancement, despite the fact that he met the minimum terms and had greater seniority than other employees who were allowed to retire.

Plaintiffs filed suit on June 25, 1997, and the case was assigned to Judge Gibson. On May 20, 1998, the case was reassigned to me.

In June 1997, defendants filed a motion to dismiss, asserting that plaintiffs had failed to exhaust their administrative remedies. Thereafter, in September 1997, plaintiff McCreery sought administrative review of his denial of benefits. Neither Gould nor Evans sought administrative review, although in February 1997, their attorney wrote to counsel for GTE, setting forth the specific reasons warranting appeal and reconsideration, and requested that his letter be forwarded to the appropriate reviewing party, whether the company or the plan administrator. That letter never was forwarded to the administrator.

On February 19, 1998, McCreery filed a motion for partial summary judgment. On April 16, 1998, McCreery was notified by the GTE Benefits Center Review Unit that he was entitled to enhanced benefits under the terms of the Plan. He notified the Benefits Center that he intended to retire

effective June 1, 1998, but declined to withdraw his motion for partial summary judgment. A decision was never issued on the motion to dismiss.

On April 22, 1998, plaintiffs Evans and Gould filed a motion for summary judgment. Defendants filed their cross-motion for summary judgment on June 1, 1998.

The matter is now before the court on all four motions.

## II. *DISCUSSION*

### A. *Standards of Review*

#### 1. Motion to Dismiss

Under Fed.R.Civ.P. 12(b), a complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.,* 135 F.3d 389, 405 (6th Cir.1998). A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied,* 510 U.S. 1177, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994).

#### 2. *Summary Judgment*

On a motion for summary judgment, the court must consider all pleadings, depositions, affidavits and admissions and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party moving for summary judgment has the burden of pointing the court to the absence of evidence in support of some essential element of the opponent's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of a genuine issue for trial. *Id.*

In order to prove that a triable issue exists, the nonmoving party must do more than rely upon allegations, but must come forward with specific facts in support of his or her claim. *Id.* After reviewing the whole record, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). " '[D]iscredited testimony is not [normally] considered a sufficient basis' " for defeating the motion. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505 (quoting *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)). In addition, where the factual context makes a party's claim implausible, that party must come forward with more persuasive evidence demonstrating a genuine issue for trial. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548; *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348; *Street,* 886 F.2d at 1480.

### B. *Mootness*

■ Article III of the United States Constitution permits federal courts to adjudicate only those claims that present actual cases or controversies. *See* U.S. Const. Art. III, § 2; *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Where intervening circum-

stances eliminate any substantial dispute, the case is rendered moot. *International Union, UAW v. Dana Corp.*, 697 F.2d 718, 720–21 (6th Cir.1983).

■ Defendants assert that plaintiff McCreery's motion for summary judgment must be denied as moot because he has succeeded in his administrative challenge and has now been awarded benefits. Plaintiff McCreery implies that his claim is not entirely mooted by the administrative result and that he remains entitled to pursue attorney fees under the statute.

Regardless of any possible future eligibility for attorney fees, plaintiff McCreery's motion for summary judgment is now moot. McCreery moved for partial summary judgment on the grounds that, under the terms of the plan, even as amended after December 12, 1996, he was qualified for the Enhanced EAIP and had higher seniority than those allowed to take part in the program. Accordingly, he asserted that he improperly was denied his benefits under the plan in accordance with ERISA, 29 U.S.C. §§ 1104, 1132. In addition, he moved for summary judgment on his claim under the LMRA on the basis that the Memorandum Agreement required GTE to offer benefits to all eligible employees, that he was eligible in years of service and age, but that he was not offered the benefits of the EAIP.

Because plaintiff McCreery has now received the benefits for which he applied, his motion for partial summary judgment is moot. Although McCreery has requested attorney fees and costs in the relief paragraph of his brief in support of his motion, award of any such fees and costs will depend on further motion and proofs, not his entitlement to participate in the EAIP under the terms of ERISA and the collective bargaining memorandum agreement. As a result, McCreery's present motion is moot. Should McCreery continue to believe that he is entitled to attorney fees and costs, he may file a separate motion.

## C. *Motion to Dismiss—Exhaustion*

Defendants moved to dismiss on the grounds that all three plaintiffs failed to exhaust their administrative remedies. Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), "provides a contract-based cause of action to participants and beneficiaries to recover benefits, enforce rights, or clarify rights to future benefits under the terms of an employee benefit plan." *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 418 (6th Cir.1998). The statute does not contain an express exhaustion requirement, but courts uniformly have concluded that the comprehensive administrative scheme implies a requirement that participants exhaust their administrative remedies before commencing suit in federal court. *Id.* (citing cases from all ten circuits that have addressed the issue); *Costantino v. TRW Inc.*, 13 F.3d 969 (6th Cir.1994).

■ The courts have noted, however, that exhaustion under ERISA is subject to exception for instances " 'when resort to the administrative route is futile or the remedy inadequate.' " *Costantino*, 13 F.3d at 974 (quoting *Winterberger v. General Teamsters Auto Truck Drivers & Helpers Local Union 162*, 558 F.2d 923, 925 (9th Cir.1977)). The district court is charged with discretion in determining whether exhaustion should be excused. *Costantino*, 13 F.3d at 974.

Plaintiffs contend that exhaustion should not bar this action because the issue in contention is whether the amendment to the pension plan, adopted on December 13, 1996, is valid, not whether plaintiffs Gould and Evans met the eligibility requirements of the plan amendment. Plaintiffs cite *Sutter v. BASF Corp.*, 964 F.2d 556, 562 (6th Cir.1992), where the Sixth Circuit distinguished between administering a "welfare plan in accordance with its terms and deciding what those terms are to be." Plaintiffs assert that they do not challenge the administration of the plan in applying plan terms to a specific factual context.

They contend that the facts are not in dispute and the application of those facts is not challenged. Plaintiffs Gould and Evans concede that, if the December 13, 1996 amendment is retroactively valid, they are not entitled to benefits.

■ In determining whether administrative exhaustion is required, the Sixth Circuit routinely has noted that exhaustion serves the purpose of allowing the development of a factual record and allowing an opportunity for the administrator of a plan to interpret its terms. *See Costantino,* 13 F.3d at 975. The administrator, however, has no authority to invalidate an amendment to the plan, only to interpret the plan as it exists under the facts and circumstances of the specific claim. Instead, under the memorandum agreement and ERISA, the plan sponsor, GTE, has the ability to amend the plan, and in so doing has no fiduciary obligation. *See* GTE Pension Plan, Art. XI, § 11.2 (reserving to board of directors of GTE the right to amend); *Sutter v. BASF Corp.,* 964 F.2d 556 (6th Cir.1992) (holding no fiduciary obligation in amending plan). Here, the December 13 amendment purports to retroactively amend the pension plan to incorporate the Enhanced EAIP. Under these circumstances, where no factual dispute exists and where plaintiffs' suit is directed to "the *legality* of [the] amended Plan, not to a mere *interpretation* of it," requiring exhaustion would be futile. *See Costantino,* 13 F.3d at 975 (emphasis in original).

Moreover, requiring exhaustion here would not serve several of the purposes of the exhaustion requirement. As the court noted in *Costantino,* exhaustion may serve a variety of purposes, and, where "the purposes of exhaustion would not be furthered, there would be no sense in exhausting administrative remedies." *Id.* at 975. The purposes of exhausting remedies include the following: (1) to help reduce the number of frivolous lawsuits under ERISA; (2) to promote the consistent treatment of claims for benefits; (3) to provide a nonadversarial method of claims

settlement; (4) to minimize the costs of claims settlement for all concerned; (5) to enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes; (6) to enhance the ability of trustees of benefit plans to correct their errors; (7) to enhance the ability of trustees of benefit plans to interpret plan provisions; (8) to help assemble a factual record which will assist a court in reviewing the fiduciaries' actions. *Id.*

Here, as in *Costantino,* few, if any, of the listed purposes will be served by requiring exhaustion in this case. Since plaintiffs' challenge is directed at the validity of a plan amendment, not to the interpretation of that amendment, consistency is unlikely to be promoted by requiring a procedure in which the administrator has no authority to rule on the propriety of the amendment itself. Further, the adversary procedures are well underway. Since defendants, including the plan and administrator, have vigorously opposed plaintiffs' position on the EAIP offer, it appears unlikely that the administrators either can or will alter their interpretation in an administrative hearing. Finally, and importantly, this case will not be aided by factual development or by the administrators' application of that record to the plan documents. Since the factual record is undisputed, the decision turns not on interpretation, but on the validity of the amendment itself. *See Costantino,* 13 F.3d at 975; *Shepherd v. Boise Cascade Corp.,* 765 F.Supp. 376, 380 (W.D.Ky.1990) (" 'Exhaustion has no relevance here, for the doctrine is only appropriate where it is necessary to develop a full factual record to take advantage of agency expertise.' ") (quoting *Janowski v. Int'l Brotherhood of Teamsters,* 673 F.2d 931, 935 (7th Cir. 1982)), *aff'd without published opinion,* 932 F.2d 969 (6th Cir.1991).

In sum, I conclude that the purposes of the exhaustion requirement will not be served by requiring Evans and Gould to

exhaust their remedies and that exhaustion would be futile. Inasmuch as McCreedy ultimately exhausted his remedies and obtained benefits, the motion to dismiss as to McCreedy is moot. In light of my conclusions, defendants' motion to dismiss is denied.

## C. *Cross–Motions for Summary Judgment*

In support of their motion for summary judgment, plaintiffs contend that the only documents in existence at the time the plan was administered constitute the plan as defined in 29 U.S.C. § 1102. Section 1102 requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." Plaintiffs assert that the December 13, 1996 amendment to the plan amounts to an impermissible retroactive amendment.

By its terms, ERISA expressly contemplates some retroactive amendments. Title 29 United States Code § 1082(c)(8) permits retroactive amendment, except to the extent that such retroactive amendment reduces the accrued benefits of plan participants unless such reduction is found by the Secretary of Labor to be necessary because of a "substantial business hardship." *See also* § 1053(a)(3)(C) (prohibiting retroactive reduction of accrued benefits). Further, § 1054(g) expressly bars any retroactive amendment that affects accrued benefits which has not been submitted to the Secretary under the notice and approval process set forth in § 1082(c)(8).

Defendants assert that because the December 13, 1996 amendment expands pension benefits previously available under the plan, the amendment may not be construed as affecting accrued benefits. The December 13, 1996 amendment, however, did not merely expand benefits. It placed limitations on otherwise-qualified employees' participation in the Enhanced EAIP. Eligibility for and acceptance of that participation, however, was complete two weeks before the existence of the formal amendment. If no document predating

the formal amendment is considered a plan document, participants were deprived of all opportunity to participate in the plan by closure of the participation period before the existence of any valid plan document. As a practical matter, in the absence of some written document, the plan could not be administered; a valid offering to participate in the plan could not by fact or logic have been made without a written document. The determination of what constitutes a valid writing to establish a plan has routinely been held to depend upon consideration of the surrounding circumstances from which "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir .1982) ("[I]t is the reality of a plan, fund or program and not the decision to extend benefits that is determinative."). *See also Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254, 1257 (D.C.Cir.1994) (citing cases); *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 551 (6th Cir. 1989).

Here, several writings exist which discuss the adoption and implementation of the Enhanced EAIP. These documents include the original pension plan, the Memorandum Agreement with the union, the Benefits Highlights brochure, and internal working documents not shared with employees. The company does not seriously suggest that internal working documents not made available to participants could amount to plan documents. It does, however, contend that the Memorandum Agreement amounts to a plan document. Accepting defendants' assertion as true, however, the Memorandum Agreement merely permitted but did not require the company to determine which classifications and locations of employees would be eligible for the plan, and to limit participation. The Memorandum Agreement expressed no . clear intent by the company to limit participation and no requirement that it do so. As a result, the Memorandum Agree-

ment, even if considered a plan document, cannot itself establish a limitation on the availability of the retirement opportunity.

The Benefits Highlights brochure, in contrast, purports to advise participants regarding how the Enhanced EAIP will affect their pension benefits. It contains unequivocal language that persons are eligible to participate solely on the basis of their combined age and service requirements. Moreover, the document expressly purports to be accurate and to "supplement[ ] information provided in the Pension Plan Summary Plan Description."

The Benefits Highlights document sets forth the eligibility requirements for participation in the plan. The document was sent from the administrator to Gould and Evans, together with a decision form. That decision form declared in clear terms that by signing the form, plaintiffs accepted the company's offer, fixed a termination date, and limited their ability to revoke their acceptance with any assurance of retaining their positions. Both accepted by October 30, 1996, the closing date for participation.

As the Sixth Circuit has stated:

ERISA "has an elaborate scheme in place for beneficiaries to learn their rights and obligations at any time, a scheme that is built around reliance on the face of written plan documents." *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). To implement this scheme, ERISA requires that every plan "shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). ERISA also requires, as we have said, a written Summary Plan Description that will "reasonably appraise ... participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

The writing requirement insures that "every employee may, on examining the plan documents, determine exactly what

his rights and obligations are under the plan."

*Sprague v. General Motors Corp.,* 133 F.3d 388, 402 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998). Here, the writings in existence at the time of plaintiffs' acceptance of retirement under the terms of the Enhanced EAIP placed no limitations on the number of persons who would be permitted to accept. The documents expressly advised plaintiffs that by their signatures they were accepting the offered terms and forfeiting certain rights to withdraw their acceptance.

In fact, the Benefits Highlights booklet specifically warned participants that "[t]he benefits you receive will be determined under the terms of the Pension Plan, including Enhanced EAIP provisions, in effect on your termination date." *See* Benefits Highlights, introductory page. By such language, defendants expressly advised participants that they would receive benefits based on the plan *in effect on* your termination date. But the only benefit plan description available on the date of plaintiffs' agreed termination date was that contained in the Benefits Summary brochure.

In *Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan,* 38 F.3d 514 (10th Cir.1994), the Tenth Circuit faced an issue almost directly on point. In *Bartlett,* the employer decided to offer its employees a cafeteria of benefits. The company circulated workbooks for determining benefits and asked employees to signify which benefits they wished to select. The workbook stated that benefits would be effective on January 1, 1991. The workbook also advised that "[a]ll regular full-time employees" were eligible to participate. On November 4, 1990, plaintiff signed up for the benefit option of $150,000 of life insurance. On November 10, 1990, plaintiff worked his last day for the company, having undergone diagnostic surgery and having been informed on November 13, 1990 that he had terminal,

inoperable colon cancer. Plaintiff was hospitalized and placed on medical leave of absence, in which status he continued until his death on January 17, 1991. Plaintiff's wife sought the expanded insurance benefits, but was denied those benefits because the formal plan summary, which was issued after plaintiff's death, defined eligibility as including only "regular full-time *active* employees." (Emphasis added.) Because plaintiff was on medical leave of absence, the company and administrator concluded that he was not considered an active employee.

The *Bartlett* court held, however, that the summary plan description, which was issued after plaintiff signed up for the program, could not retroactively add an eligibility term that was not contained in the only written document available at the time of plaintiff's death. The court expressly distinguished *Gridley v. Cleveland Pneumatic Co.,* 924 F.2d 1310 (3d Cir.), *cert. denied,* 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991), in which the plaintiff attempted to rely on a brochure that was contrary to an existing summary plan description. The *Bartlett* court held that the company could not add terms to the only existing written document sometime after the date a participant was entitled to and had elected to receive benefits.

■ Here, as in *Bartlett,* the only written documents in existence during the entire period of eligibility for the Enhanced EAIP was the Benefits Highlights brochure, which clearly advised plaintiffs that they were eligible without qualification. Based on those documents, plaintiffs were entitled to receive benefits and had elected to receive those benefits, accepting the offer of benefits and a termination date before the formal plan amendment was adopted. Under the reasoning of *Bartlett,* the formal amendment was ineffective to retroactively deprive plaintiffs of those vested rights. *See also Member Services Life Ins. Co. v. American Nat'l Bank & Trust Co. of Sapulpa,* 130 F.3d 950, 956 (10th Cir.1997) ("Because plan administrators have an obligation imposed by ERISA to operate a plan according to current plan documents, a post hoc amendment clearly cannot alter a plan provision in effect at the time performance under the plan became due.")

Furthermore, the plan was not administered even in accordance with the terms of the December 13, 1996 amendment. Instead, the caps set forth in the amendment were not followed. One additional person in plaintiffs Evans' and Goulds' classification was allowed to participate in the program. Six additional persons in plaintiff McCreedy's classification were allowed to participate. Plaintiffs have asserted and defendants have not denied that with the exception of Evans and Gould, all persons who met the Rule of 76 requirement and who were provided packages and accepted those offers were allowed to retire under the Enhanced EAIP. Those decisions to allow additional retirees in excess of the plan were made by GTE's area manager— not by the Plan Administrator. *See* Pl.Ex. 16: Merrill dep. pp. 38–39.

As plaintiffs note, GTE renders its plan unqualified for tax purposes if it fails to administer it in accordance with plan terms or if it offers benefits based on the employer's selection of individuals. *See* Treasury Regulation 1.411(d)–4 A–4(a) ("A plan provision that makes a section 411(d)(6) protected benefit available only to those employees as the employer may designate is within the scope of this prohibition. Thus, for example, a plan provision under which only employees who are designated by the employer are eligible to receive a subsidized early retirement benefit constitutes an impermissible provision under section 411(d)(6)."). Where a plan states that it is intended to be a qualified plan, the plan should be construed to maintain qualified status. *See Crouch v. Mo-Kan Iron Workers Welfare Fund,* 740 F.2d 805, 809 (10th Cir.1984). Therefore, the tax consequences of administering the plan on an ad-hoc basis in excess of the plan

also counsel against allowing retroactive effect to the December 13 amendment.

■ Defendants next half-heartedly argue that if the Benefits Highlights book is considered to be a plan document, it must be read together with the Holiday Parker letter, which mentioned that caps might be placed on the number of participants in any job category. However, the Parker letter does not purport to be a plan document or to accurately describe the plan. In addition, the only document prepared by the plan administrator is the Benefits Highlights book itself, which purports to have been made as accurate as possible and to supplement the existing pension plan summary description. Further, while mailed in the same larger envelope as the documents from the administrator, the Parker letter was not part of the sealed envelope coming from the GTE Benefits Center itself. Were plaintiffs attempting to rely on the Parker letter to establish an entitlement to benefits, the court has no doubt defendants would vigorously oppose such reliance as an attempt to create a contract contrary to the terms of the plan. Indeed, as the Tenth Circuit has noted, "[a]n employee benefit plan cannot be modified ... by informal communications regardless of whether those communications are oral or written." *Miller v. Coastal Corp.*, 978 F.2d 622, 624 (10th Cir.1992), *cert. denied*, 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 152 (1993). Where as here, a letter is written by a company employee rather than the plan administrator, that letter cannot be considered to amend what the administrator has clearly and expressly declared to be a complete description of the plan.

For these reasons, I conclude that the Benefits Highlights book amounts to a plan document and is the controlling document for determining whether plaintiffs were entitled to receive benefits at the time they accepted the offer to participate. Even if the Memorandum Agreement is properly considered a plan document as well, nothing about the Memorandum

Agreement is inconsistent with the Benefits Highlights brochure and nothing in the Memorandum Agreement mandated the imposition of limits on the number of persons who would be allowed to participate. Instead, the Memorandum Agreement simply permitted the company to implement the Enhanced EAIP with certain limitations, in the company's discretion.

■ No subsequent amendment to the plan could operate to deprive plaintiffs of their properly exercised option to participate in the plan that was offered to them. As I have stated on a previous occasion, "[o]nce a participant became entitled to coverage under the then existing terms of the Plan, it would be entirely illusory to allow [the employer] to essentially divest them of that right by retroactively deleting the benefit." *Edward W. Sparrow Hospital Ass'n, Inc. v. Industrial Welding, Inc.*, 1990 WL 599020, 1990 U.S.Dist. LEXIS 9194 (W.D.Mich. July 19, 1990), *quoted in Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1378 (6th Cir.), *cert. denied*, 513 U.S. 1058, 115 S.Ct. 667, 130 L.Ed.2d 601 (1994). As the court stated in *Bartlett*, a beneficiary can "not be bound to terms of the policy of which he had no notice." 38 F.3d at 517. "[O]ne of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time." *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). This goal is implemented by a scheme "built around reliance on the face of written plan documents." *Id.*, *quoted in Member Services Life Ins. Co.*, 130 F.3d at 956–7 (reaffirming *Bartlett*).

■ I also conclude that the Benefits Highlights document is properly viewed as a supplement to a summary plan description, as described by 29 U.S.C. § 1022. Title 29 United States Code § 1022 provides the following:

A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provid-

ed in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title.

Subsection (b) provides in relevant part:

The summary plan description shall contain the following information: The name and type of administration of the plan; ... the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter ... and the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title).

Defendants assert that the Benefits Highlights brochure may not properly be considered a summary plan description because it fails to contain many of the elements set forth under the statute, including such basics as the administrator's name, and procedures for presenting claims under the plan. Defendants' argument, however, fails accurately to describe what the document itself purports to be—a *supplement* to the summary plan description, which was previously circulated to participants. ERISA does not include a specific provision for supplementing summary plan descriptions, but neither does it proscribe such supplements. Defendants' original summary plan description contains all of the elements set forth under the statute. Defendants' Benefits Highlights for the Enhanced EAIP specifically references the earlier summary plan description and purports to supplement that information with the specific additional benefits available under the Enhanced EAIP. No basis exists for declining to treat the Benefits Highlights brochure as precisely what it purports to be—a supplement to the summary plan description. *See Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 556 (6th Cir.1998) (holding that in interpreting ERISA plan, terms should be given "their plain meaning, in an ordinary and popular sense") (citing *Pitcher v. Principal Mut. Life Ins. Co.,* 93 F.3d 407, 411 (7th Cir. 1996); *Regents of Univ. of Michigan v. Employees of Agency Rent–A–Car,* 122 F.3d 336, 339 (6th Cir.1997)). I therefore am persuaded that the Benefits Highlights brochure, by its express terms, constitutes a supplement to the Summary Plan Description, and therefore its terms have the same effect as any terms of the Summary Plan Description.

**446**

If the terms of the Benefits Highlights brochure constitute part of the summary plan description, their effect under the case law is clear. Under ERISA, the terms of a summary plan description prevail over terms of other plan documents. *See Helwig v. Kelsey–Hayes Co.*, 93 F.3d 243 (6th Cir.1996) ("[S]tatements made in Summary Plan Descriptions are binding, and if they conflice with statements made in the Plan itself, the Summary Plan Description controls.") (citing *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134 (6th Cir.1988)).

Accordingly, I also conclude that plaintiffs are entitled to benefits under the Enhanced EAIP under the terms of the Benefits Highlights brochure as a summary plan description, which does not place limits on the number of employees who would be entitled to participate. In light of my conclusions, I need not reach plaintiffs' remaining arguments.

### III. *CONCLUSION*

For the foregoing reasons, I conclude that plaintiff McCreery's motion for summary judgment is **DENIED AS MOOT**. I further conclude that the motion of plaintiffs Gould and Evans for summary judgment is **GRANTED**. Defendants' cross-motion for summary judgment is **DENIED**.